UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

YU JUAN SHENG,

               Plaintiff,

       - against -

CITY OF NEW YORK, et al.,

               Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
05-CV-1118 (RRM)(VVP)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff, Yu Juan Sheng, commenced the instant civil action pursuant to 42 U.S.C. §

1983, alleging that Defendants violated her rights under the Fourth, Sixth, and Fourteenth

Amendments to the United States Constitution, and certain provisions of New York's Vehicle

and Traffic law. On September 20, 2010, the Court issued an Order adopting Judge Pohorelsky's

Report and Recommendation, thus dismissing several of plaintiff's claims for relief. (Doc. No.

110.) Presently before the Court are the parties' cross-motions for summary judgment seeking

judgment on, or dismissal of, plaintiff's remaining claims. For the reasons set forth below,

defendants' motion is GRANTED in its entirety, and plaintiff's cross-motion is DENIED.

## BACKGROUND

### I.    Facts[1]

---

[1] The following facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and
exhibits submitted in connection with the motions. The facts are uncontroverted, except as noted. It should be
noted, however, that many of the facts set forth by plaintiff are not material, or were included in support of claims
that were already dismissed by an earlier Order. (*See* September 20, 2010 Order (Doc. No. 110).) In addition, many
of the facts plaintiff includes in her statement are not supported by admissible evidence, as required by Local Rule
56.1. Loc. R. 56.1 ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each
statement controverting any statement of material fact, must be followed by citation to evidence which would be
admissible, set forth as required by Fed. R. Civ. P. 56(c).") For example, plaintiff repeatedly cites to her attorney's
declaration to support assertions in her 56.1 Statement. However, the declaration of plaintiff's counsel, Thomas
Hillgardner, is "riddled with inadmissible hearsay, conclusory statements and arguments, and information clearly
not made on the affiant's personal knowledge," and "more resemble[s] an adversarial memorandum than a bona fide

### a. Plaintiff's Parking Tickets

Parking tickets (formally known as "summonses") for parking violations in New York City ("the City") are adjudicated by the Adjudications Division of the City's Department of Finance ("DOF"), which was previously known as the Parking Violations Bureau ("PVB").[2] (Def. 56.1 Statement (Doc. No. 123-2) at ¶ 1.) The DOF maintains Business Centers in each borough where persons wishing to pay or contest parking tickets can attend to such business. (Id. at ¶ 7.) In addition to contesting parking tickets in person at a DOF Business Center, hearings on parking tickets may be had by mail or via the Internet. (Id.) Plaintiff has been issued about 100 parking tickets over the past approximately ten years. (Pl. 56.1 Statement (Doc. No. 127) at ¶ 2.) For the reasons set forth in defendants' memorandum of law and reply memorandum in support of their motion, plaintiff only has standing to challenge 16 tickets, the facts of which are set forth in this section.[3]

On July 26, 2004, Traffic Enforcement Agent ("TEA") Sinclair issued Summons Number 7137216705 to plaintiff for parking in a No Standing zone. (Def. 56.1 Statement (Doc. No. 123-2) at ¶ 15.) At her deposition in this case plaintiff testified that a passerby informed her that an officer was writing the ticket, so she drove away. (Id.) The fine amount was $115.00. (Id.) On August 23, 2004 a $10.00 penalty was imposed, although plaintiff apparently did not receive a

---

affidavit." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999). Therefore, the Court only includes facts from plaintiff's Rule 56.1 Statement that comply with the Rule.

[2] The parties refer to the DOF and PVB interchangeably in their Rule 56.1 statements, and thus the Court refers to them interchangeably as well.

[3] Defendants claim that plaintiff lacks standing to base a due process claim on tickets on which she prevailed at administrative hearings, and those on which she defaulted. The burden is on plaintiff to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Plaintiff must show: "(1) an injury in fact that is concrete and not conjectural; (2) a causal connection between the injury and the defendant's conduct or omissions; and (3) a likelihood that the injury will be redressed by a favorable decision." *Smith v. Dean*, 1997 U.S. Dist. Lexis 6483, *5-6 (N.D. Cal. May 6, 1997) (citing *United Food & Comm'l Workers Union, Local 751 v. Brown Group, Inc.*, 116 S. Ct. 1529, 1533 (1996). Plaintiff fails to respond to defendants' argument. Therefore, the Court only sets forth the facts of tickets which defendants have identified as those that plaintiff has standing to challenge.

notice of the ticket until after that date. (*Id.*) On September 14, 2004, any further penalties were stayed following a request for hearing by Internet. (*Id.*) Plaintiff challenged the ticket on the grounds that it was not served in accordance with New York Vehicle and Traffic Law ("VTL") § 238(2) and that it did not include the vehicle's registration expiration date. (Pl. 56.1 Statement (Doc. No. 127) at ¶ 18.) On December 2, 2004, plaintiff was found guilty, but was only assessed the base fine of $115.00. (*Id.*)

On December 29, 2005, plaintiff was issued Summons Number 7472458582 for parking while street cleaning rules were in effect. On January 24, 2006, the PVB placed a penalty hold pending a review of plaintiff's hearing by mail. Nevertheless, on January 26, 2006, the PVB imposed a $10.00 penalty. On January 27, 2010, the PVB sent plaintiff a settlement letter. On April 5, 2006, the PVB found plaintiff guilty. (Magsino Reply Decl. (Doc. No. 129) at ¶ 8.)

On December 6, 2006, TEA Sparacio issued Summons Number 7494807962 to plaintiff for parking in a bus stop. On April 3, 2007, plaintiff was found guilty after an in-person hearing and the amount owed was reduced by $30.00. On May 1, 2007, plaintiff paid $115.00. On May 4, 2007, plaintiff appealed; that appeal was abandoned on June 7, 2007. (Def. 56.1 Statement (Doc. No. 123-2) at ¶ 16.) On December 6, 2008, TEA James issued Summons Number 7960900760 to plaintiff for parking in front of a fire hydrant. On January 8, 2009, plaintiff was found guilty after an in-person hearing. (*Id.* at ¶ 17.)

On July 10, 2009, TEA Velella issued Summons Number 7794112102 to plaintiff for parking in a No Parking zone. On October 5, 2009, the PVB placed a penalty hold pending plaintiff's hearing by mail, through which she sought to interpose defense that she possessed a Parking Permit for Persons with Disabilities ("PPPD"). On October 28, 2009, in its hearing decision, the PVB adjourned the hearing for thirty days to afford plaintiff an opportunity to

submit her defense by mail to the SPI handicap unit. Plaintiff failed to submit a defense and on January 2, 2010, the summons entered judgment. Plaintiff has not paid the fine. (Magsino Reply Decl. (Doc. No. 129) at ¶ 4.)

In early 2010, plaintiff received two summonses, 7428981153 and 7439817771. (Pl. 56.1 Statement (Doc. No. 127) at ¶ 33.) Plaintiff asserted a defense based on her PPPD, which she claimed was obscured by snow. (*Id.*) However, the hearing examiner rejected that defense and found plaintiff guilty. (*Id.*) Plaintiff appealed these two violations and awaits a hearing. (*Id.*)

On May 27, 2010, TEA Kurukulasekara issued Summons Number 7930975277 to plaintiff for obstructing traffic. On June 18, 2010, plaintiff was found guilty after a hearing. Plaintiff appealed the determination, and on September 23, 2010, the PVB mailed her a notice of an October 5, 2010 hearing before the Appeals Board. Plaintiff failed to appear at the hearing and her appeal was deemed abandoned. (Magsino Reply Decl. (Doc. No. 129) at ¶ 7.)

On February 24, 2011, TEA Rocca issued Summons Number 7433004488 to plaintiff for parking at an expired meter. Plaintiff asserted a defense that the meter was broken. On April 1, 2011, plaintiff was given notice that her defense was denied. She has not paid the ticket and the time to appeal has lapsed. (Magsino Reply Decl. (Doc. No. 129) at ¶ 3.)

On February 10, 2008, TEA Mahmud issued Summons Number 7150132455 to plaintiff for parking in a No Standing zone. On February 26, 2008, plaintiff was found guilty after an in-person hearing, during which she sought to interpose a defense of "guilty with an explanation." However, the ALJ who heard the matter deemed plaintiff to have plead "not guilty," despite plaintiff's argument that the regulation in that spot had only changed one month prior to her ticket being issued, and that she was thus not aware of the regulation. (Pl. 56.1 (Doc. No. 127) at ¶ 36.) Plaintiff also asserts that the ALJ refused to consider her request to reduce the fine. (*Id.*)

4

On December 10, 2004, TEA Schlosberg issued Summons Number 1040036223 to plaintiff for parking in a No Standing Except Trucks Loading and Unloading Zone. Plaintiff failed to either pay the fine or contest the ticket. On March 19, 2005, this ticket went into judgment. Plaintiff then moved in person to vacate the default judgment; on March 10, 2006, her motion was denied. (Def. 56.1 Statement (Doc. No. 123-2) at ¶ 19.)

On December 15, 2004, TEA Hayward issued Summons Number 1048822503 to plaintiff for parking in a crosswalk. (*Id.* at ¶ 20.) On April 24, 2005, TEA Thomas issued Summons Number 7136829604 to plaintiff for parking at an expired meter. Plaintiff failed to either pay the fine or contest the ticket, and on May 22, 2005, a $10.00 penalty was imposed. On three occasions, plaintiff attempted to have this ticket dismissed administratively by claiming that the meter was broken. While DOF reviewed plaintiff's claim, any further penalties were put on hold. On August 25, 2005, plaintiff's broken meter claim was denied. On January 7, 2006, this ticket went into judgment. Plaintiff moved in person to vacate the default judgment; on March 10, 2006 her motion was denied. (*Id.* at ¶ 21.)

On October 31, 2005, TEA Jainarine issued Summons Number 7146488949 to plaintiff for parking in a No Parking zone. Plaintiff failed to either pay the fine or contest the ticket, and on November 28, 2005, a $10.00 penalty was imposed. On February 11, 2006, this ticket went into judgment. Plaintiff moved to vacate the default judgment; on March 10, 2006, her motion was denied. (*Id.* at ¶ 22.)

On October 11, 2007, TEA Williams issued Summons Number 7127366366 to plaintiff for parking in a No Parking zone. Plaintiff failed to either pay the fine or contest the ticket. On January 19, 2008, this ticket went into judgment. Plaintiff then moved in person to vacate the default judgment. On February 26, 2008, her motion was denied. Plaintiff appealed,

5

and on July 29, 2008 the determination of the Administrative Law Judge ("ALJ") was upheld. (*Id.* at ¶ 23.)

On August 30, 2007, TEA Estevez issued Summons Number 7471741491 to plaintiff for parking on the street while street cleaning rules were in effect. Plaintiff failed to either pay the fine or contest the ticket. On December 8, 2007, this ticket went into judgment. Plaintiff then moved in person to vacate the default judgment. On February 26, 2008, her motion was denied and she was found guilty of the violation. Plaintiff appealed and on July 29, 2008 the ALJ's determination was upheld. (*Id.* at ¶ 18.)

### b. Other Conduct

Plaintiff argues that certain distinct policies and/or practices the City employs in the issuance and adjudication of parking tickets violates due process.

### i. Queens Business Center Incident

Plaintiff alleges that as a result of an incident at the Queens Business Center on October 29, 2004, she determined that she would no longer contest those parking tickets that her attorney advised should be adjudicated in person, because she did not believe she could obtain a fair hearing at the Queens Business Center. (Pl. 56.1 Statement (Doc. No. 127) at ¶ 14.) During the incident, plaintiff arrived at the Queens Business Center with her attorney to challenge several tickets.[4] (*Id.*) When plaintiff's attorney sought to bring a chair into the hearing room he got into an altercation with ALJ Sean Roberts. (*Id.*) Following the altercation, plaintiff's attorney asked the ALJ to recuse himself from the ticket hearing. (*Id.*) However, the supervising ALJ, Allan

---

[4] Plaintiff does not specify which tickets she sought to contest at this hearing, and thus the Court is not able to ascertain if plaintiff has standing to base a due process violation on the City's alleged conduct at the Queens Business Center. However, because defendants do not argue that plaintiff lacks standing to argue that this incident violated her rights, the Court will consider it in the analysis to the extent that plaintiff articulates a claim.

Patricof, appeared with a police officer, whom plaintiff's attorney believed would arrest him. (*Id.*) Thus, plaintiff and her attorney left the business center. (*Id.*)

Plaintiff asserts her fear of her attorney's arrest as an explanation for default on several of the Notices of Parking Violation ("NOPVs") at issue in this case. (*See, e.g., id.* at ¶¶ 43, 44.) Nevertheless, plaintiff subsequently contested parking tickets at the Queens Business Center. (Exs. I & V to Magsino Decl. (Doc. Nos. 123-4, 123-11).)

### ii. Plaintiff's Request to Subpoena TEAs

At the January 2009 hearing for Summons Number 7960900760, a ticket plaintiff received for parking near a fire hydrant, plaintiff's attorney asked the ALJ to subpoena the TEA who wrote the ticket. (Pl. 56.1 Statement (Doc. No. 127) at ¶ 27.) Plaintiff's attorney argued that he needed to question the TEA about the facts stated on the parking ticket, which apparently gave an inconsistent location of plaintiff's vehicle. (*Id.*) The ALJ denied plaintiff's request to subpoena the TEA, noting that he did not find "sufficient reason" to conduct what he called a "K Hearing." (*See* Exhibit D to Magsino Reply Decl. (Doc. No. 129-2) at p. 4.) Plaintiff's attorney also stated in his declaration that he sought to subpoena a TEA at a May 2010 hearing. (Pl. 56.1 (Doc. No. 127) at ¶ 40.)

### iii. Plaintiff's Requests for Hearing Transcripts

Plaintiff asserts that she has requested a transcript of the hearing for every appeal plaintiff has taken from a finding of liability on a ticket since 2007. (*Id.* at ¶ 29.) In response to at least one of plaintiff's requests for a transcript, on May 4, 2007, the City provided plaintiff with an audiotape that plaintiff claims was "mostly inaudible." (*Id.* at ¶ 42.) Plaintiff also claims that her attorney objected to appeal hearings being heard while plaintiff's request for a written transcript of the hearing had been ignored. (*Id.* at ¶ 47.) However, the City has provided

plaintiff with at least one hearing transcript as part of a motion to dismiss an Article 78 proceeding. (*See* Reply Decl. of Teresita Magsino (Doc. No. 129) at ¶ 5 n.1.)

## II. Procedural History

In February 2005, plaintiff commenced this action and sought a preliminary injunction through an Order to Show Cause. In August 2005, the Court denied plaintiff's preliminary injunction motion. (Doc. No. 22.) By decision dated May 10, 2006, the Second Circuit affirmed. *Yu Juan Sheng v. City of New York*, 181 Fed. Appx. 38 (2d Cir. 2006.)

After limited discovery in the summer of 2008, the parties cross-moved for partial summary judgment. In June 2009, Magistrate Judge Pohorelsky issued a Report & Recommendation ("R&R") that recommended that defendants' motion for partial summary judgment be granted, and that plaintiff's motion for partial summary judgment be denied. (R&R (Doc. No. 86).) Specifically, the R&R recommended that defendants' motion be granted (and plaintiff's cross-motion be denied) as to plaintiff's claims that her Sixth Amendment rights to a public trial were violated, and that her Fourth Amendment rights were violated when her car was seized by the City. (*Id.* at 12-16.) The R&R also recommended that defendants' motion be granted as to plaintiff's claim that New York Civil Practice Law and Rules ("CPLR") Article 78 proceedings are an inadequate remedy for challenging DOF administrative determinations relating to parking tickets. (*Id.* at 8-11.) In addition, the R&R recommended that plaintiff's motion for partial summary judgment be denied, both as to her due process claims (both procedural and substantive) and her claim for declaratory and injunctive relief. (*Id.* at 17-26.) Finally, the R&R recommended that defendants be granted summary judgment on plaintiff's state law claims relating to the docketing of judgments entered by DOF for parking tickets and her state law claim relating to improper service of parking tickets by affixation. (*Id.* at 25-28.)

8

Plaintiff objected to the R&R, and thereafter this Court upheld the R&R in its entirety.[5] (Doc. No. 110.)

Defendants now move for summary judgment on the remaining claims in plaintiffs' third amended complaint. Plaintiff cross-moves for summary judgment.

## STANDARD OF REVIEW

A motion for summary judgment will be granted when there is no material issue of fact to be decided and the undisputed facts warrant judgment for the moving party as a matter of law. *See* Fed. R. Civ. P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Inst. for Shipboard Educ. v. Cigna Worldwide Ins. Co.*, 22 F.3d 414, 418 (2d Cir. 1994). If a reasonable jury could return a verdict for the non-movant, then a material issue of fact remains in contention and the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The materiality of the facts is determined by the substantive law governing the claims. *Id.* The burden of proving that no material issue of fact remains in dispute rests on the movant. *Celotex*, 477 U.S. at 322.

Once a motion has been made, however, the non-moving party must set forth specific factual allegations to avoid summary judgment. *Kurisoo v. Providence and Worcester R.R. Co.*, 68 F.3d 591, 594 (2d Cir. 1995); *Fahle v. Braslow*, 913 F. Supp. 145, 149 (E.D.N.Y. 1996), *aff'd*, 111 F.3d 123 (2d Cir. 1997) (citations omitted). Conclusory, *ipse dixit* assertions will not defeat a summary judgment motion. *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). Although the non-moving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Rule 56(c) and (e) provide that the non-

---

[5] As a result of these rulings, the following paragraphs of the Third Amended Complaint are no longer at issue: 94, 95, 97, 101, 106, 108, 109, 113, 114, 115, 118, 119, 120, 124, 125, 126, 127, 129, 130, 131, 132, 162, 164, 170 and 172-175, and paragraphs 2, 3, 8, 9, 10, 11, 12 and 13 of the *ad damnum* of Third Amended Complaint. (September 20, 2010 Order (Doc. No. 110) at 1.)

moving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *United States v. Rem*, 38 F.3d 634, 643 (2d Cir. 1994). Any ambiguities and all inferences must be drawn in favor of the non-movant. *Cigna Worldwide*, 22 F.3d at 418; *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990).

## DISCUSSION

In the case at bar, plaintiff challenges virtually every policy and/or practice employed by the City in issuing and adjudicating parking tickets with which she (or her attorney) disagrees, and claims that the City thereby violates both her substantive and procedural due process rights. Defendants argue that City, at worst, violated state law through some of its policies and practices, and that violations of state law do not rise to the level of a constitutional violation. Moreover, defendants argue that plaintiff could have availed herself of an adequate post-deprivation remedy by commencing an Article 78 proceeding for her claims that the City violated state law. Finally, defendants argue that plaintiff's rights to procedural due process are not violated by the City's conduct because at all times she had notice and an opportunity to be heard.

### I.    Adequate Remedy Through Article 78

"Section 1983 is not a means for litigating in a federal forum whether a state or local administrative decision was wrong." *Alfaro Motors Inc. v. Ward*, 814 F.2d 883, 888 (2d Cir. 1987) (citations omitted)). Consequently, to the extent plaintiff argues that the DOF or any of the named defendants do not follow their own rules, or otherwise acted contrary to local law, those assertions do not state a cognizable claim under the due process clause. *See McDarby v. Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990) (city pension fund's "failure to adhere to

[Administrative Code] requirements does not, without more, constitute a deprivation of procedural due process under the federal constitution"); *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58-59 (2d Cir. 1985) ("even an outright violation of state law in the denial of a license will not necessarily provide the basis for a federal claim, at least when the applicant has a state law remedy" (citations omitted)).

Additionally, a "due process claim for the deprivation of a property interest is not cognizable in a federal district court if state courts provide a remedy for the deprivation of that property interest." *Gabris v. New York City Taxi & Limousine Comm'n*, 2005 U.S. Dist. Lexis 23391, *8 (S.D.N.Y Oct. 6, 2005) (*citing Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). New York courts provide such a remedy by way of an Article 78 proceeding. *Id.* (*citing Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001)). Moreover, an "Article 78 proceeding is adequate even though petitioner may not be able to recover the same relief that he could in a § 1983 suit." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880-82 (2d Cir. 1996).

Here, if plaintiff thought that a PVB administrative decision violated state law, she could have contested that decision in an Article 78 proceeding (as she has done in connection with certain parking tickets). *Locurto v. Giuliani*, 264 F.3d 154, 174-75 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes." (citations omitted)); *Sindone v. Kelley*, 2007 U.S. App. Lexis 26463, *2 (2d Cir. 2007); *Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 156-57 (2d Cir. 2006) ("Article 78 provided a 'perfectly adequate post deprivation remedy'"); *Fleming v. Kerlikowske*, 1999 U.S. Dist. Lexis 7226, *15-17 (W.D.N.Y. May 7, 1999) (collecting cases).

## II.     Substantive Due Process[6]

For state action to be taken in violation of the requirements of substantive due process, the action must have occurred under circumstances warranting the labels "arbitrary" and "outrageous." *See, e.g., County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ("[T]he touchstone of due process is protection of the individual against arbitrary action of government.") (citation and internal quotation marks omitted); *Rochin v. California*, 342 U.S. 165 (1952) (conduct that "shocks the conscience" violates substantive due process), *overruled on other grounds by Mapp v. Ohio*, 367 U.S. 643 (1961); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221-22 (6th Cir. 1992) ("To prevail, a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the decision.") (citation and internal quotation marks omitted).

Substantive due process is an outer limit on the legitimacy of governmental action. It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority. *See, e.g., Lewis*, 523 U.S. at 846 ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense.") (citation and internal quotation marks omitted); *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988) ("Only a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief under § 1983.") (citation omitted).

---

[6] The parties fail to address plaintiff's property interest. *See Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001) (holding that proof of a substantive due process violation requires (1) a valid property interest and (2) evidence that defendants infringed on that interest in an arbitrary or irrational manner). Thus, the Court assumes without deciding that plaintiff had a sufficient property interest to raise a due process claim.

Whether taken alone, or together, none of the actions about which plaintiff claims rises to the level of such a violation.

### a. "Sewer Service" of Parking Tickets

According to plaintiff, a violation of substantive due process is committed where TEAs issue parking tickets to vehicles that drive away before the TEA can give the ticket to the driver, or affix it to the vehicle. (Pl. Mem. (Doc. No. 126) at 10-15.) Plaintiff argues that the City violates substantive due process by violating VTL § 238(2), which requires either personal service of a ticket or affixation to the vehicle. Plaintiff also cites, for example, *Ko v. City of New York Dep't of Finance, Parking Violations Bur.*, 28 Misc.3d 603 (Sup. Ct. N.Y. Co. 2010), which held that VTL § 238(2) does not provide an exception for motorists who drive away before a ticket is served on them personally or by affixation to their vehicle. Thus, plaintiff argues, defendants deprive her of substantive due process by violating state law. (*See* Pl. Opp. (Doc. No. 126) at 13 ("[a]ll of these acts of the City and Commissioner Kelly taken against motorists are taken in clear violation of [] controlling [state] statute and [state] case law.").)

Here, plaintiff has not established and cannot establish that "government officials [are] abusing their power, or employing it as an instrument of oppression." *Lewis*, 523 U.S. at 846 (rejecting a claim that a high-speed pursuit of a motorcycle that ended in death was a substantive due process violation) (citations omitted). Plaintiff also fails to explain how the City's conduct constitutes "the most egregious official conduct." *Id.* Plaintiff only offers only one conclusory sentence in support of her argument: "Where the City knowingly sewer serves parking tickets, in coordination with the Police Commissioner who trains his agents to swear to the truth of false facts of service . . . and then the City fixes the hearing so that its hearing examiners decide all adjudications in accordance with its 'pipe-dream view' of the law and contrary to the holding of

13

the Supreme Court, thereby exercising jurisdiction over a class of citizens that the legislature clearly determined would not be subject to PVB jurisdiction, [] the conduct of the City shocks the conscience and this entire procedure denied plaintiff substantive due process." (Pl. Mem. (Doc. No. 126) at 14-15.

However, a close examination of the record reveals that plaintiff has not adduced evidence of all of her assertions. First, plaintiff has established that the City issues drive-away tickets. (Def. 56.1 Statement (Doc. No. 123-2) at ¶ 15.) Second, plaintiff has established that counsel to the DOF, composed a memorandum regarding the *Ko* decision and discussing its significance to the DOF. (Ex. 17 to Hillgardner Decl. (Doc. No. 125-2).) Plaintiff offers no factual support for the more outrageous aspects of her argument; i.e., the aspects that would provide a basis for a jury to conclude that the City's conduct is conscience-shocking. *See United States v. Salerno*, 481 U.S. 739, 746 (1987). Significantly, plaintiff fails to offer factual support for the conclusions that the "the Police Commissioner [] trains his agents to swear to the truth of false facts of service" or that "the City fixes the hearing so that its hearing examiners decide all adjudications in accordance with its 'pipe-dream view' of the law." (Pl. Mem. (Doc. No. 126) at 14-15.) In sum, plaintiff has only established that the City issues tickets that are not served in accordance with state law, and that the DOF issued a memorandum concluding that the City may continue to violate state law. Additionally, plaintiff has not explained why Article 78 is not an adequate post-deprivation remedy, *see Alfaro Motors, Inc.*, 814 F.2d at 888, and the fact that the New York Supreme Court, in an Article 78 proceeding, dismissed a drive away ticket for lack of service under VTL § 238(2) in *Ko* undermines any such assertion.

Two cases cited by plaintiff for the proposition that the City violates New York Penal Law by issuing drive-away tickets where TEAs swear that service was effected in accordance

with the law are distinguishable. First, *United States v. Wiseman*, 445 F.2d 792 (2d Cir. 1971), involved a process-service company, the employees of which had filled out 19 affidavits of service stating that people had been served who in fact had not been served. The affidavits were then used to obtain default judgments and income executions against the individuals purportedly served. *Id.* at 797. Whereas the scheme in *Wiseman* sought to obtain judgment against individuals who had no form of notice that an action was instituted against them, in the case at bar the City not only attempted to serve a ticket on plaintiff, who fled the scene upon learning a ticket was being written (Pl. 56.1 Statement (Doc. No. 127) at ¶ 18), but later mailed her several notices of that ticket. (*Id.*) Second, *Sykes v. Mel Harris and Assoc., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010), involved a scheme to obtain default judgments against individuals and then, *inter alia*, restrain their bank accounts. In contrast to the facts at bar, the defendants in *Sykes* purposely avoided giving notice to the defendants of the actions pending against them. *Id.* at 419 ("More than 90% of the individuals they sued did not appear in court; most defaulted because they were not actually served."). Thus, these cases are inapposite.

Plaintiff has not adduced any evidence to establish a substantive due process violation based on the City's issuance of drive-away tickets. Therefore, defendants are entitled to summary judgment on this issue.[7]

### b. Fair Hearing

Plaintiff argues that the City fails to provide plaintiff and other parking ticket recipients with a "fair hearing," and purports to base that conclusion on several premises discussed below in detail. First, plaintiff claims that she was denied due process because tickets are not adjudicated by a disinterested and impartial judicial officer. She relies on *Ward v. Village of*

---

[7] As a result of this conclusion, the City's practices with regard to drive-away tickets cannot form any part of the basis for plaintiff's argument that she is denied a fair hearing.

*Monroeville, Ohio*, 409 U.S. 57 (1972) in support. However, the facts of *Ward* are so far removed from those at bar; *Ward* involved a mayor of a relatively small municipality who also presided over ticket adjudications. *Id.* at 58. "A major part of village income [was] derived from the fines, forfeitures, costs, and fees imposed by him in his mayor's court." *Id.* By contrast, plaintiff has not established that the ALJs who adjudicate tickets for the City are responsible for the City's finances or that they take in a substantial portion of the City's revenue. Nor has plaintiff adduced any other admissible evidence of bias. Finally, plaintiff cites *Tumey v. Ohio*, 273 U.S. 510 (1927) for the proposition that a defendant is deprived of due process where a judge has a substantial pecuniary interest in reaching a conclusion against her. *Tumey* is even further from the facts of this case than *Ward*, as the mayor in *Tumey* who presided over criminal trials of accused violators of Ohio's Prohibition Act was entitled to a portion of the fines he collected when a defendant was found guilty. 273 U.S. at 520. Again, plaintiff has not established that ALJs receive a portion of ticket revenues or put forth any other evidence of bias. Thus, this aspect of plaintiff's claim fails. [8]

### i. Burden of Proof

Plaintiff lists several other premises for the conclusion that she is deprived of a fair hearing. Plaintiff argues that the City violates due process by shifting the burden of proof from the City to ticket recipients. (Pl. Mem. (Doc. No. 126) at 27-30.) Plaintiff's argument is based

---

[8] The Court also notes that defendants have cited cases more analogous to the facts at hand, holding that the "adjudicative reliability" of an ALJ is not "fatally compromised by the manner of their appointment and by their lack of secure tenure." *Van Harken v. Chicago*, 103 F.3d 1346, 1352-53 (7th Cir. 1997). The Court finds the *Van Harken* court's reasoning persuasive – ALJs are not entitled to a portion of fines they impose, have no quota of fines they must impose or risk losing their jobs and have no other financial stake in the outcome of ticket adjudications. *Id.* at 1353. Moreover, if an ALJs attenuated stake in the outcome of ticket adjudication (arising from the possibility of losing their job if they do not impose enough fines) were sufficient to disqualify them on constitutional grounds, elected judges would similarly be required to be disqualified from criminal cases because of their interest in appearing tough on crime to gain re-election. *Id.* Regardless, plaintiff has failed to adduce any evidence that ALJs have any stake in the outcome of ticket adjudications other than inadmissible hearsay, such as an unsigned letter to the editor of the New York Law Journal. (*See* Pl. Mem. (Doc. No. 126) at 26.)

16

on state law requiring that a ticket make out a prima facie case of a parking violation in the first instance, which is overcome when the ticket recipient comes forward with evidence refuting the charge. (*Id.* at 27-28 (citing, e.g., VTL §§ 240(2)(b), 238(1); *Matter of Silverman v. Appeals Board of the Parking Violations Bur.*, 100 A.D.2d 778 (1st Dept. 1984); *Matter of Wheels, Inc. v. Parking Violations Bur. Of the Dept. of Transp. Of the City of New York*, 185 A.D.2d 110 (1st Dept. 1992)).) Once the ticket recipient has come forward with such evidence, the burden shifts to the City to prove the violation by a preponderance of the evidence. *Matter of Gruen v. Parking Violations Bur. Of City of New York*, 58 A.D.2d 48 (1st Dept. 1977). Plaintiff argues that the City requires ticket recipients to "persuade" an ALJ of their defense, rather than come forward with evidence, and that the City is never made to meet its ultimate burden once a ticket recipient comes forward.

While plaintiff's counsel claims that he "never witnessed" a proper burden-shifting analysis in any ticket adjudication at which he was present, (Hillgardner Decl. (Doc. No. 125-2) at ¶ 31), he fails to identify a ticket at issue in this litigation where the burden was improperly shifted to the detriment of plaintiff. Therefore, plaintiff lacks standing to make this argument. *United Food & Comm'l Workers Union, Local 751*, 116 S. Ct. at 1533. In any event, plaintiff's claim lacks merit. She fails to cite to a source of law supporting the proposition that an ALJ's improper application of the burden of proof violates due process. Plaintiff's counsel also fails to provide any rationale upon which the Court could conclude that this alleged practice shocks the conscience. *See, e.g., Lewis,* 523 U.S. at 847 (conduct that "shock[s] the conscience and [is] so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency would violate substantive due process.").

17

### ii. Registration Expiration Date

Plaintiff also claims that she is denied a fair hearing where TEAs fail to enter her vehicle's registration expiration date on the ticket, and ALJs sustain a ticket against a defense that VTL 238(2) requires this information. Plaintiff cites *Matter of Ryder Truck Rental v. Parking Violations Bur. of Trans. Admin. of City of N.Y.*, 62 N.Y.2d 667 (1984), for the proposition that a registration expiration date is an element of a parking ticket mandated by the legislature, the absence of which is a ground for dismissal of the ticket. In support of this assertion, plaintiff's counsel merely describes his own dissatisfaction with the City's use of technology to issue parking tickets. (Pl. Mem. (Doc. No. 126) at 33.) Nowhere in this section of plaintiff's brief is a citation to case law, or a cogent argument, supporting a conclusion that this conduct "shock[s] the conscience and [is] so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." *Lewis,* 523 U.S. at 847. Indeed, plaintiff's counsel once again merely argues in conclusory fashion that this practice "is just another blatant example of how the City fixes parking ticket hearings to provide it with the outcome it pleases, state law notwithstanding." (*Id.* at 34.) However, violations of state law do not constitute a due process violation. *Yale Auto Parts, Inc.*, 758 F.2d at 58-59. Thus, plaintiff has failed to prove a due process violation based on this policy.

### iii. Inconsistent Location Data

Plaintiff next claims that inconsistent location data on a ticket, and the City's refusal to credit a defense that such inconsistent data invalidates the ticket, violates due process. (Pl. Mem. (Doc. No. 126) at 34.) Plaintiff bases this argument on a ticket she received, wherein the street address of the violation conflicted with the police precinct data. (Pl. 56.1 Statement (Doc. No. 123-2) at ¶ 27.) Plaintiff completely neglects to articulate why this policy, by itself or in

conjunction with other policies, violates due process. Notably, plaintiff even fails to establish that this practice violates state law. Thus, plaintiff cannot prove a due process violation based on this policy.

### iv. Subpoenas

Plaintiff argues that the City violates due process where ALJs refuse to issue subpoenas for TEAs to appear at ticket hearings. (Pl. Mem. (Doc. No. 126) at 36.) First, plaintiff attempts to base her argument on the legal premise that a ticket hearing is a quasi-criminal proceeding. However, that argument has already been rejected by this Court. (*See* R&R (Doc. No. 86) at 12-14.)

Moreover, it is well settled that the due process clause is not violated when hearsay evidence (such as the sworn statement of a TEA that issued the ticket) is submitted in an administrative hearing. *See, e.g., Richardson v. Perales*, 402 U.S. 389, 402 (1971) (although doctor not subject to cross-examination, a report authored by the doctor can constitute substantial evidence even when there is contradictory testimony by the adversary's doctor); *Yancy v. Apfel*, 145 F.3d 106, 113 (2d Cir. 1998) (ALJ's denial of claimant's request to subpoena treating physician for social security disability hearing so that claimant could cross-examine physician was not abuse of discretion). And New York state courts are no different. Courts have repeatedly upheld administrative determinations based upon hearsay evidence. *People ex rel. Vega v. Smith*, 66 N.Y.2d 130 (1985) (administrative disciplinary determinations based on written reports do not violate due process); *Gray v. Adduci*, 73 N.Y.2d 741, 536 N.Y.S.2d 40 (1988). Indeed, statements from absent witnesses may form the sole basis for an agency's ultimate determination. *Harry's Chenango Wine & Liquor, Inc. v. State Liquor Authority*, 158

A.D.2d 804 (3d Dep't 1990) (upholding suspension of liquor license based on sworn statement that was contested by plaintiff's employees).

### v.  Hearing Transcripts

Plaintiff claims that she is denied a fair hearing because the City fails to provide transcripts of PVB hearings where she seeks to appeal a guilty determination. (Pl. Mem. (Doc. No. 126) at 39.)  However, only one ticket is at issue upon which plaintiff can base this claim, because plaintiff has only set forth facts supporting the assertion that she paid the $2.00 transcript fee for Summons Number # 7960900760.  Defendants provided this transcript to plaintiff in February 2010.  Apparently conceding that she has no basis to argue that she has not been provided with a transcript, plaintiff instead argues that the transcript is somehow defective because it was not signed or sworn. (Pl. Reply (Doc. No. 133) at 11.)  Plaintiff has failed to controvert defendants' claim that plaintiff was provided with a transcript with citation to admissible evidence, as required by Rule 56.1.  Thus, plaintiff has put forth no factual basis to support this argument.

### vi.  Appeals Board

Plaintiff also claims that she is deprived of a fair hearing because the Appeals Board of the PVB fails to provide a factual basis for its decisions. (Pl. Mem. (Doc. No. 126) at 43.) Again, plaintiff argues that this practice violates state law.  Fundamentally, plaintiff fails to establish that she appealed one of her guilty determinations and that the Appeals Board failed to make a factual record.  Therefore, plaintiff lacks standing to challenge this practice. *See United Food & Comm'l Workers Union, Local 751*, 116 S. Ct. 1529, 1533.

### vii. The Organization of the PVB

Plaintiff claims that the manner in which the PVB is organized violates due process. (Pl. Mem. (Doc. No. 126) at 44-47.) Plaintiff advances an insufficient factual basis for this claim. Plaintiff cites to her attorney's declaration as factual support for assertions about the structure and inner-workings of the PVB. (*Id.* at 44.) However, the relevant sections of Hillgardner's Declaration are not based on personal knowledge. In order to offer testimony about a matter, a witness must give some evidence to support a finding that he has personal knowledge of the matter. Fed. R. Evid. 602. For example, plaintiff's counsel seems to assert that the PVB does not have a board of 12 supervising and senior hearing examiners, as required by VTL § 236(2)(c). But his basis for personal knowledge of these alleged PVB deficiencies is not alleged. Hillgardner neither cites to a document describing the DOF's organization, nor does he mention any other credible source upon which he bases his statement that the City does not currently have an adequate board of supervising and senior examiners. Similarly, plaintiff's counsel speculates about (1) the responsibilities of the Chief ALJ, (2) the Chief ALJ's mental state, and (3) the mental state of ALJs vis-à-vis the Chief ALJ. (*Id.*) Therefore, plaintiff lacks a factual basis to argue that defendants violate her due process rights through the PVB's organization.

Plaintiff's legal argument also fails. Plaintiff claims that the alleged re-organization of the PVB violates state law. (Pl. Mem. (Doc. No. 126) at 46.) But for the reasons set forth above, violations of state law do not establish a due process violation. *See Yale Auto Parts, Inc.*, 758 F.2d at 58-59. Additionally, plaintiff's citation to *Tumey* and *Ward* are unavailing. Indeed, plaintiff admits that *Tumey* is distinguishable from this case on the facts. (Pl. Mem. (Doc. No. 126) at 46 ("the hearing examiner does not profit on a percentage basis from the revenues the City receives on NOPVs").) However, plaintiff's suggestion that the rationale in *Tumey* is

nonetheless applicable here fails because plaintiff attempts to base this argument on the assertion that ALJs are cowed into engaging in unspecified misconduct by the threat of losing per diem employment. Plaintiff cites the anonymously authored letter to the Editor of the New York Law Journal to support this assertion. (*Id.*) Plaintiff also cites two other news articles as evidence of a due process violation. (*Id.*) Newspaper articles and other hearsay evidence are not sufficient to oppose a motion for summary judgment. *Fridman v. City of New York*, 183 F. Supp. 2d 642, 646 n.2 (S.D.N.Y. 2002) (newspaper articles and transcript of City Council hearing not admissible on a motion for summary judgment). Therefore, plaintiff's factual and legal arguments for this premise both fail.

Plaintiff's contention that the City denies her a fair hearing is not supported by fact or law. Each premise set forth by plaintiff is either legally flawed or has no factual basis. At most, plaintiff could prove at trial that the City violates state law through some of its policies. Significantly, plaintiff fails to put forth evidence from which a jury could conclude that defendants have engaged in conduct that "shock[s] the conscience and [is] so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency." *Lewis,* 523 U.S. at 847. Moreover, plaintiff does not explain how the totality of the City's allegedly onerous policies violates due process and she cites no case law to that effect.

Even assuming arguendo that defendants have not properly followed the applicable law in adjudicating one of her tickets, plaintiff's remedy was to commence a New York CPLR Article 78 proceeding challenging that determination. The availability of a post-deprivation Article 78 proceeding to correct errors by an ALJ provides plaintiff with the requisite due process. Therefore, defendants are entitled to summary judgment on these claims.

## III. Procedural Due Process

Plaintiff also advances a procedural due process theory. However, plaintiff's brief omits the federal standard for procedural due process, which is that a "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Bank & Trust Co.*, 339 U.S. 306, 313 (1950); *see also Rackley v. City of New York*, 186 F. Supp. 2d 466, 483 (S.D.N.Y. 2002). Notice need only be of a type that is reasonably calculated to apprise a person of an action against him so that he knows of the availability of adequate pre- and post-deprivation remedies under state law. *See Rackley*, 186 F. Supp. 2d at 481. The opportunity to be heard must be "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, (1976). In *Rackley*, the court found that where "defendants sent, via mail, multiple notices to plaintiff informing him: (1) that parking tickets issued to him were past due; (2) that default judgments were impending against him; and (3) that default judgments had been entered against him," the plaintiff had been provided with adequate notice for due process purposes. 186 F. Supp. 2d at 482-83.

Plaintiff's argument that the policies employed by the City in issuing parking tickets violate state law falls short of establishing a constitutional violation. Plaintiff argues that state law controls what constitutes notice of a parking violation for constitutional purposes. (Pl. Mem. (Doc. No. 126) at 17.) She then proclaims that mailing a notice of the violation does not meet the requirements of state law for service of process. (*Id.*) Thus, plaintiff argues, the City asserts jurisdiction over motorists in violation of state law. (*Id.* at 18.)

In response to defendants' contention that several notices the City mails to ticket recipients satisfy due process, plaintiff baldly asserts that the "Court should disregard any argument that the mailing of Notice of Outstanding Parking Violations and the Notice of

Impending Default Judgment constitutes reasonable notice for constitutional purposes." (*Id.*) Plaintiff states that the Second Circuit held in *Wiseman* that "service of process in a civil action in a manner that is in compliance with state law is mandatory for such service of process to meet minimum constitutional due process requirements." (*Id.*) Of course, plaintiff mischaracterizes *Wiseman*, which in fact stated that "[w]here *no attempt whatever* is made to comply with such [state law] requirements, it cannot be said that minimum constitutional requirements as to due process have been met." 445 F.2d at 797 (emphasis added). Although plaintiff does not identify a specific ticket she contends was issued in violation of state law for the purpose of this argument, she seems to argue that issuance of drive-away tickets violates state law because the ticket is not served on the driver personally or affixed to the vehicle, as required by the VTL. However, to say that is very different than to say that defendants made no effort to comply with the VTL requirement for service of a parking ticket. Indeed, the City fails to serve drive-away tickets not because its agents make no attempt to comply with state law, but because the motorist leaves the scene, thus making service impossible. Moreover, the City's agents not only attempt to comply with state law by first seeking to serve the ticket on the motorist, the City also mails several notices to the recipient of the ticket after it is issued. *See Rackley*, 186 F. Supp. 2d at 482-83.

Thus, plaintiff has failed to establish a procedural due process violation. Notice and an opportunity to be heard, *Mullane*, 339 U.S. at 313, although not necessarily in compliance with state law, *McDarby*, 907 F.2d at 1337, is all the Constitution requires to satisfy procedural due process.

## IV. Injunction Request and *Monell* Discovery

### a. Injunction

Plaintiff requests an injunction barring the City from towing vehicles with outstanding parking violations. (Pl. Mem. (Doc. No. 126) at 47.) In order to obtain a preliminary injunction,[9] plaintiff must demonstrate "(1) either (a) a likelihood of success on the merits of its case or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor, *and* (2) a likelihood of irreparable harm if the requested relief is denied." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (emphasis in original). Plaintiff has not demonstrated a likelihood of success on the merits for all of the reasons set forth above. Moreover, plaintiff entirely neglects to set forth an argument as to why she would suffer irreparable harm if the City is not enjoined. Therefore, plaintiff's request is DENIED.

### b. *Monell* Discovery

Plaintiff renews her request for discovery to establish a *Monell* claim based on an alleged ticket quota implemented by the City. (Pl. Mem. (Doc. No. 126) at 47-48.) Indeed, the case has come full circle in the regard that plaintiff was denied *Monell* discovery because the case law requires that she first establish a violation of her constitutional rights by an individual defendant. (*See* January 4, 2010 Memorandum & Order (Doc. No. 99).); *see also Morales v. Irizarry*, 1996 WL 609416 (S.D.N.Y. Oct. 22, 1996). As plaintiff has not established any liability of defendants under Section 1983, *Monell* discovery is not necessary. Therefore, plaintiff's request is DENIED.

---

[9] Although plaintiff does not specify whether she seeks a preliminary or permanent injunction, the Court assumes that because she urges the Court to deny defendants' summary judgment motion she anticipates a trial, and thus seek interim relief.

## V.    Arguments Obviated by the June 26, 2009 R&R

Plaintiff claims that the City's requirement of payment of fines, interest and penalties as a condition to file an appeal of a parking ticket violates due process. (Pl. Mem. (Doc. No. 126) at 19-21.) For the same reason stated in the R&R, the City's requirement that ticket recipients pay fines prior to an appeal is constitutional. (R&R (Doc. No. 86) at 20.)

Also, plaintiff argues that delays in the scheduling of appeals violate her due process rights. (Pl. Mem. (Doc. No. 126) at 21-25.) Again, the Court adopts Judge Pohorelsky's reasoning from the June 26, 2009 R&R and holds that the City does not violate due process by failing to schedule prompt appeals. (R&R (Doc. No. 86) at 20.)

## VI.    The Queens Business Center Hearing

While plaintiff's Rule 56.1 statement contains a lengthy and detailed description of her attorney's altercation with an ALJ at the Queens Business Center, her brief fails to articulate why that incident deprives her of due process. Plaintiff goes no further than to make conclusory assertions that certain tickets she received "matured into PVB judgments [as] a result of the exclusion of . . . her attorney from the Queens Business Center," and that she "is entitled to her day in court on the issue of whether the threats of arrest of [her] attorney" deprived her an adjudication and were unlawful. (Pl. Mem. (Doc. No. 126) at 49.) Plaintiff makes no attempt to articulate an argument that the incident violated plaintiff's due process rights, and does not explain how the incident "shock[s] the conscience and [was] so brutal and offensive that it [did] not comport with traditional ideas of fair play and decency." *Lewis*, 523 U.S. at 847.

Regarding procedural due process, plaintiff does not refute defendants' argument that despite her purported fear of her attorney's arrest, she could nevertheless get a hearing at another business center or through mail or the Internet. (Def. Mem. (Doc. No. 124) at 15-16.) Indeed,

26

plaintiff and her attorney have attended hearings at the Queens Business Center after 2004. (Ex. V to Magsino Decl. (Doc. No. 123-11).) Therefore, defendant is entitled to summary judgment on this issue.

Plaintiff's remaining arguments lack merit or are unsupported by any factual basis.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in its entirety, and plaintiff's cross-motion is DENIED. As this Order disposes of all remaining claims, the Clerk of Court is directed to enter judgment in favor of defendants on all claims, and to close the file.

SO ORDERED.

Dated: Brooklyn, New York
     April 17, 2012

*Roslynn R. Mauskopf*

ROSLYNN R. MAUSKOPF
United States District Judge